ATHERTON *v.* MICHIGAN GUARANTY CORPORATION.

1. ESTOPPEL—FORGED INDORSEMENT—OWNER MAY ASSERT TITLE AS AGAINST GOOD-FAITH PURCHASER.
   An owner, who intrusted unindorsed certificates of stock to another, who forged indorsement, is not thereby estopped from asserting title thereto as against a good-

[1] Estoppel, 21 C. J. §§ 176, 181.

faith purchaser, in the absence of express or implied ratification of the forgery.

2. SAME—PARTY PLEADING ESTOPPEL BY LACHES MUST BE PREJUDICED.

   To constitute estoppel by laches, the party pleading it must have been prejudiced thereby.

3. SAME—DEFENSE OF ESTOPPEL BY LACHES NOT AVAILABLE TO GOOD-FAITH PURCHASER WHO FAILS TO SHOW PREJUDICE.

   An owner whose indorsement of stock certificates was forged was not estopped, because of laches, from asserting title thereto against a good-faith purchaser who claimed to have been thereby prevented from realizing on other indorsers' guaranty of the forged indorsement, where one of said indorsers became insolvent before the stock was purchased, and the other, although gone out of business, was not shown to be financially irresponsible, and the purchaser although informed of the forgery by the owner within two months after he learned of it, made no effort to secure reimbursement from either indorser.

4. EQUITY—ONE SUING IN EQUITY ENTITLED ONLY TO EQUITABLE RELIEF—MONEY DECREE NOT JUSTIFIABLE.

   Where the owner sued in equity for the restoration of certificates of stock transferred under forged indorsement, and for an accounting for dividends, he is entitled to the relief sought, which a court of equity may grant, but he is not entitled to a money decree for the value of the stock, as would be the case had he brought an action at law for conversion.

Appeal from Saginaw; Snow (Ernest A.), J. Submitted October 13, 1926. (Docket No. 94.) Decided December 8, 1926.

Bill by Bert G. Atherton against the Michigan Guaranty Corporation and others to vacate the cancellation of certain shares of corporate stock, and for an accounting. From a decree for plaintiff, defendant Michigan Guaranty Corporation appeals. Modified and affirmed.

²Equity, 21 C. J. § 219; Estoppel, 21 C. J. § 154; ³Equity, 21 C. J. § 219; ⁴Id., 21 C. J. § 121 (Anno).

*Robert H. Brucker* and *R. L. Crane,* for plaintiff.

*Norris, McPherson, Harrington & Waer* and *Willard J. Nash,* for appellant.

Plaintiff was the owner of 37 shares of the stock of defendant Michigan Guaranty Corporation. He was approached by defendant McDonald who suggested that plaintiff exchange it for stock of another company. Up to this time McDonald stood well in his community. He saw plaintiff on several occasions on this subject. Plaintiff consulted his banker about the stock owned by the other party, and it is fairly apparent he was impressed with the advisability of the trade although he had not decided upon it. McDonald asked plaintiff to be permitted to exhibit his stock to the other party and plaintiff permitted him to take the certificates for that purpose but did not indorse them, nor did he authorize McDonald to indorse them or make any trade for him. McDonald forged plaintiff's indorsement, signed his own name as a witness and sold the stock to Phipps, Beeson & Company, brokers, located at Saginaw, who in turn sold it to defendant Claud M. Hurd doing a brokerage business at Grand Rapids under the name of C. M. Hurd & Company. Hurd sold the stock to the secretary of the corporation and he surrendered the certificates to it and they were canceled. Both firms of brokers guaranteed the signature of plaintiff. McDonald absconded but was apprehended and convicted of the forgery. Other facts will be stated as necessity requires. This bill was filed to vacate the cancellation of the certificates and to require the issuance of new ones and for an accounting for dividends. Some time after the case was submitted plaintiff amended the prayer of the bill and asked additional relief by way of a money decree and a money decree was entered against the corporation for the value of

the stock at the date of its cancellation.    The corporation appeals.

FELLOWS, J. (*after stating the facts*).    The facts are not in serious dispute.    But defendants' counsel insist that the application of certain legal rules contended for by them requires a reversal of the decree. They first insist that they are entitled to apply the rule of equitable estoppel which became ingrafted in the law before the adoption of the uniform stock transfer act (3 Comp. Laws 1915, § 11920 *et seq.*) that where the owner of a stock certificate indorsed it in blank and intrusted it to another he was estopped from asserting title as against a purchaser who in good faith had bought it in reliance on the indorsement. But here the certificates were not indorsed by the owner.    The diligence of counsel has brought to our attention no case where the doctrine of estoppel was applied to a case of actual forgery which had not been subsequently ratified either expressly or by necessary implication and we do not think the doctrine should apply to such a case.    There was no ratification by plaintiff and no act of his which tended in that direction.    The indorsement was a forgery, did not pass title, and plaintiff is not estopped on this record from so asserting.

It is further insisted by appellant's counsel that plaintiff is estopped by his laches.    It is claimed that Phipps, Beeson & Company became insolvent and went into the hands of a receiver and that Hurd went out of business, and it is insisted that plaintiff's delay in bringing this action prevented appellant from realizing upon the guaranty by these brokers of the genuineness of the signature on the certificates.    Some further facts should be here stated.    Plaintiff did not learn for several weeks that his stock had been sold by McDonald.    Some six weeks after he let McDonald take the certificates he became suspicious and wired

the corporation not to honor any assignment of his stock until further notice and received a wire that it had already been transferred and canceled.   His attorney then wrote the corporation but the letter was not as full as might be desired.   Some time after this, plaintiff is not certain the exact time which elapsed but it could not exceed two months, he went to appellant's office and informed the officers of the forgery. He did not bring this suit until considerable time thereafter.   If under these circumstances it could be claimed there was such laches as to operate as an estoppel, a question not necessary to decide, it is not here available to appellant.   To constitute estoppel there must be prejudice to the party pleading it.   It is true that Phipps, Beeson & Company went into the hands of a receiver, but this was before appellant received the stock.   It is true that Hurd went out of business, but he only went out of the brokerage business.   He answered plaintiff's bill, was present and represented by counsel at the hearing.   He was called as a witness by defendants but was not inquired of as to his financial ability.   However, appellant's treasurer testified:

"I think the C. M. Hurd Company referred to is at this time financially responsible.   From what I know of them financially they are substantial now as they were in 1922, August and September of that year."

Although appellant was told of the forgery not to exceed two months after plaintiff learned of it, it did not then nor so far as this record discloses has it since made any effort to secure reimbursement from either brokerage firm, nor does it attempt to show that it could not then or now recover all it lost through the forgery of McDonald.   It has not shown that it was in any way prejudiced.   There is no estoppel by laches.

Appellant also insists a money decree was not justified. With this contention we agree. Had plaintiff desired only to recover the value of the stock at the time of its conversion, he should have brought an action at law for conversion. . By his original bill he sought the restoration of his certificates or the issuance to him of new ones in their place and an accounting for dividends. Upon this record he is entitled to such relief; it is relief a court of equity may grant. He sought equitable relief and he must be content with equitable relief. The decree must be modified by requiring appellant to issue plaintiff 37 shares of its capital stock and account to him for the dividends.

As so modified, it will be affirmed. Appellant will have costs of this court.

BIRD, C. J., and SHARPE, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred. SNOW, J., did not sit.